RECEIVED
FEB 1 7 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| EVELYN PATIO | * | CIVIL ACTION NO. 05-0048 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Evelyn Patio, born September 7, 1945, filed applications for a period of disability, disability insurance benefits, and supplemental security income on June 25, 2002, alleging disability as of January 30, 2001, due to chronic fatigue syndrome, thyroid problems, and back pain.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from University Medical Center ("UMC") dated November 30, 2000 to June 4, 2002.** Claimant was treated for a right-sided thyroid cyst. (Tr. 158-168). The diagnosis was a benign colloid nodule. (Tr. 159). She was prescribed Synthroid, which decreased the nodule size. (Tr. 151).

A thyroid scan taken on August 23, 2001, showed findings consistent with resolving thyroiditis. (Tr. 150). Claimant refused any surgery. (Tr. 147, 149).

On April 13, 2002, claimant complained of intermittent pain from the back to the right upper quadrant with nausea and bloating. (Tr. 140-41). An abdominal ultrasound study showed cholecystolithiasis and thickening of the gallbladder wall to 6.5 mm. (Tr. 138-39). After a laparoscopic cholecystectomy performed on May 29, 2002, revealed symptomatic cholelithiasis. (Tr. 112).

**(2) Consultative Examination by Dr. Nathaniel Winstead, Internal Medicine, dated August 10, 2002.** Claimant complained of leg pain, particularly on the left, thyroid problems, weakness, intermittent throbbing headaches with blurred vision, and chest pain when tired. (Tr. 169). Her medications included Aleve, Tylenol, and Synthroid. She was able to dress and feed herself, stand for about 2 hours at a time or about 4 hours out of an 8-hour day, walk about one block on level

ground, sit for about 30 minutes at a time, lift about 5 pounds, drive for about 15 minutes at a time, and do simple chores, such as sweeping and cooking.

On examination, claimant was 63 inches tall and weighed 185 pounds. (Tr. 170). Her blood pressure was 157/107. She ambulated well, and was able to get on and off of the exam table and up and out of the chair without difficulty. She was able to dress and undress without difficulty.

Visual acuity was 20/100 on the right and 20/50 on the left without glasses. Claimant's heart had regular rate and rhythm with no murmurs, gallops, or rubs.

Examination of the spine and extremities revealed 2+ pulses in the upper extremities with no cyanosis, clubbing, or edema. Claimant was able to ambulate without assistance. Her grip strength was 4-5/5 bilaterally. She was able to perform fine and gross manipulative tasks, such as finger to thumb, without difficulty. She had no atrophy or deformity of any of the joints or muscle groups, including the wrists, elbows, knees, ankles, and shoulders.

Neurologically, claimant's sensory strength was intact. (Tr. 171). She had no signs of any cerebellar deficits. Cranial nerves were intact.

X-rays of the lumbar spine revealed normal alignment of the vertebral bodies. Claimant had no narrowing of any joint spaces. She had completely normal lumbar spine films.

Dr. Winstead's impression was lower back pain, with some sciatica type of qualities which would probably benefit from some physical therapy or anti-inflammatory drugs, and thyroid problems. He noted that inadequate replacement of thyroid hormone "could easily explain her fatigue symptoms." He opined that claimant's ability to sit, stand, walk, lift, hear, speak, or handle objects was unlimited at that time.

**(3) Medical Assessment by Dr. Charles H. Louis dated November 3, 2003.** Dr. Louis checked off that claimant could not consistently ambulate effectively on a sustained basis without significant pain, or sustain a reasonable walking pace over a sufficient distance to complete shopping at a mall without significant pain. (Tr. 173). He noted that on most days, she experienced pain in the left foot and ankle, swelling in the left foot, subsequent pain in the left knee, pain in the low back, spontaneous left foot eversion, and low back pain on protracted sitting. He wrote that she could not lift and/or carry 10 or 20 pounds while standing/walking up to 2 hours in an 8-hour day, stand or walk for 6 hours in an 8-hour day, stand/walk for 2 hours in an 8-hour day, or sit 6 hours in an 8-hour day.

**(4) Records from UMC dated July 18, 2002 to December 5, 2003.** On August 28, 2002, claimant complained of left ankle pain and swelling with leg pain. (Tr. 221). She also reported fatigue. Left ankle x-rays showed a large spur at the

4

insertion of the Achilles tendon and a very minimal spur on the posteroinferior aspect of the calcaneus. (Tr. 218). Knee x-rays showed mild osteoarthritis. (Tr. 208, 217).

On November 7, 2002, claimant was followed up for her thyroid mass. (Tr. 214). She was taking Synthroid. A CT scan showed a mass in the isthmus of the thyroid gland, measuring about 2 cm. in diameter. (Tr. 207). She was not interested in surgery. (Tr. 211, 214).

On May 5, 2003, claimant continued to complain of left knee pain, swelling to the leg and foot, and numbness and tingling. (Tr. 197). An injection was recommended, but claimant refused. Knee x-rays showed no evidence of acute fractures or other abnormalities. (Tr. 198-99).

On May 20, 2003, claimant complained of bilateral hand pain. (Tr. 189). She stated that she dropped things frequently, and could not hold items for any long periods after picking them up because of pain. Her hand grip was 5/5 on the right and 4/5 on the left. The impression was hand pain.

**(5) Records from UMC dated May 27, 2004 to July 19, 2004.**[1] On May 27, 2004, claimant complained of pain between her shoulder blades with spasms and occasional low back pain radiating to the ankle. (Tr. 235). The assessment was back pain and hypothyroidism.

---

[1] These records were submitted to the Appeals Council.

An thyroid gland ultrasound dated June 9, 2004, showed two solid masses in the right lobe of the thyroid gland measuring less than 1 cm., and a 2 cm. mass in the isthmus. (Tr. 233). On June 29, 2004, the assessment was a stable mass. (Tr. 232).

**(6) Claimant's Administrative Hearing Testimony.** At the hearing on December 17, 2003, claimant was 58 years old. (Tr. 247). She had completed one year of college and had obtained a certificate from business school. She had past work experience as a sales clerk and department manager.

Claimant testified that she had last worked at Wal-Mart as a sales clerk for 10 years. She stated that she had quit because she had pains in her legs from standing. (Tr. 248). She reported that she still had constant left leg pain and ankle swelling. (Tr. 257). She also complained that her left hand was not as strong as her right, and that she could not read without glasses. (Tr. 257, 262).

Additionally, claimant reported that she had thyroid problems, diabetes, and hypertension. (Tr. 248, 259). She stated that she was on Synthroid, Vioxx, Celebrex, Lotensin, Zocor, Glucotrol, and Amoxil. (Tr. 248, 251, 252). However, she testified that she was not taking her medications for diabetes and hypertension because she could not afford them. (Tr. 259).

Regarding activities, claimant testified that she did the best that she could as far as cooking and cleaning. (Tr. 249). She stated that she was able to bathe and

dress herself, but needed assistance getting out of the tub.

As to limitations, claimant stated that she could not sit or stand for a half-hour because of back pain. (Tr. 250). She thought that she could not walk even for a block. She reported that she could not bend or squat. She complained that she had to lie down when she sat for too long. (Tr. 257).

**(7) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred in assessing her residual functional capacity, resulting in an erroneous finding at Step 4 of the evaluation process that she could return to her past work.

First, claimant asserts that the medical evidence established that she suffered from thyroid problems that could "reasonably" result in her complaints of fatigue and weakness. (rec. doc. 10, p. 3). In support of this contention, claimant cites Dr. Winstead's opinion that "inadequate replacement of her thyroid problems could easily explain her fatigue symptoms." (Tr. 171). Despite this statement, however, Dr. Winstead opined that claimant's "ability to sit, stand, walk, lift, hear, speak, or handle objects is *unlimited* at present." (emphasis added). Thus, Dr. Winstead's report supports, rather than negates, the ALJ's determination that claimant had the residual functional capacity to perform work-related activities.

Next, claimant argues that the objective evidence support her complaints of knee, left leg, and ankle pain. (rec. doc. 23). Based on the evidence, the ALJ was

7

was persuaded that her thyroid, back, left knee, and left foot impairments were severe. (Tr. 23). However, he was not convinced that these impairments were severe enough to preclude all work activity. (Tr. 24).

Specifically, the ALJ noted that none of claimant's treating physicians had placed limitations on her activities that would prevent all functional activity, except for Dr. Louis. (Tr. 24). However, the ALJ rejected Dr. Louis' opinion that claimant was unable to perform any work activity because it was unsupported by any documented evidence.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence*." (emphasis added). *Newton*, 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and

conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ rejected Dr. Louis' opinion because it was conclusory and unsupported by any documented evidence. (Tr. 24, 173-74, 223-24). Indeed, all that Dr. Louis provided was a checklist regarding claimant's symptoms, without any documentation or diagnostic evidence to support his opinion. (Tr. 173-74). It is well established that "the ALJ has *sole* responsibility for determining a claimant's disability status." (emphasis added). *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Further, the ALJ is free to reject the opinion of any expert when the evidence supports a contrary conclusion. *Id.* Thus, it was within the province of the ALJ to rely on Dr. Winstead's opinion rather than Dr. Louis'.

Next, claimant argues that she had medically-determined impairments to support her complaints of pain. (rec. doc. 10, p. 4). While the ALJ acknowledged that claimant had impairments which were capable of producing some pain and limitation, he found that the "severe and debilitating pain" she alleged was not supported by the medical evidence. (Tr. 24). In particular, he noted that she did not have the "stigmata" frequently observed in a patient who suffers from constant,

unremitting pain which was totally unresponsive to therapeutic measures. (Tr. 25).

Claimant asserts that the ALJ's reliance upon the absence of "stigmata" was based upon old law. (rec. doc. 10, p. 4). However, it is still the law of this Circuit that the absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular atrophy, or impairment of general nutrition, could itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378,1384 (5th Cir. 1988). Thus, this argument lacks merit.

The ALJ determined that claimant's pain was not disabling based the objective evidence. Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir.1991); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986). As the ALJ's determination as to pain is supported by the evidence, it is entitled to deference. *Id.*

Finally, claimant argues that the ALJ erred in finding her capable of past relevant work as a sales clerk, because she could not perform that job as described in her work history report. (rec. doc. 10, p. 6; Tr. 58). In that report, she indicated that

she was required to walk and stand for 8 hours, sit for 15 to 20 minutes, climb for 4 hours, stoop, kneel, and crouch for 7 hours, handle, grab, or grasp big objects for 7 hours, and lift cases of shoes that weighed up to 100 pounds with assistance. (Tr. 58).

Under the Social Security Rulings, a claimant will be found to be "not disabled" when it is determined that she retains the RFC to perform: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *SSR* 82-61. The Dictionary of Occupational Titles dictates that the job of sales clerk has a light exertional level and requires occasional stooping and crouching, and frequent reaching, handling, and fingering. *DOT* 290.477-014. In his decision, the ALJ cited this provision of the *DOT* in making his determination that claimant could perform her past relevant work as a sales clerk. (Tr. 26). Dr. Winstead's opinion indicates that claimant could meet the requirements for this job as generally required by employers through the national economy. (Tr. 171). Accordingly, claimant's argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service

of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 17th day of February, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
MAGISTRATE JUDGE

COPY SENT:
DATE: 2-17-06
BY: gbl
TO: RFD
cmH